## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASBESTOS DISEASE AWARENESS ORGANIZATION,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL PARK SERVICE, DEPARTMENT OF THE INTERIOR, U.S. DEPARTMENT OF LABOR – OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, ENVIRONMENTAL PROTECTION AGENCY and EXECUTIVE OFFICE OF THE PRESIDENT<br><br>*Defendants*. | No. 1:26-cv-00029-RJL |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

    Robert M. Sussman DC BAR NO. 226746
    SUSSMAN & ASSOCIATES
    3101 Garfield Street, NW
    Washington, DC 20008
    (202) 716-0118
    bobsussman1@comcast.net

    *Attorney for Plaintiff Asbestos Disease Awareness Organization*

i

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS……………………………………………………………………ii

TABLE OF AUTHORITIES……………………………………………………………….iii

INTRODUCTION…………………………………………………………………………...1

STATEMENT OF THE CASE……………………………………………………………….3
    The Hazards of Asbestos……………………………………………………………3
    About Requestor ADAO……………………………………………………………4
    About the Defendants………………………………………………………….....4
    White House East Wing Demolition………………………………………………..5
    Asbestos Identification and Abatement Requirements under Federal Law……………...6
    ADAO'S FOIA Requests for Records of Asbestos Abatement at the East Wing………….7

ARGUMENT…………………………………………………………………………..,,,,,,8
    I.    COURTS HAVE AUHORITY TO ENFORCE FOIA REQUESTS IF AGENCIES FAIL TO MAKE DETERMINATIONS ON THESE REQUESTS WITHIN 20 WORKING DAYS………………………………………………………………9
    II.   THE UNDISPUTED FACTS IN THIS CASE DEMONSRATE THAT DOL, DOI AND NPS FAILED TO MEET FOIA DEADLINES AND THE COURT MUST ORDER THEM TO COME INTO COMPLIANCE………………………...10

CONCLUSION……………………………………………………………………..13

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Akel v. U.S. Dep't of Justice*, 578 F. Supp. 3d 88 (D.D.C. 2021)……………………………………...9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)………………………………………………………...9

*Citizens for Resp. and Ethics in Washington v. Fed. Election Commn.*, 711F.3d 180
(D.C. Cir. 2013)………………………………………………………………………………….. 9,10,11

*Clemente v. Fed. Bureau of Investigation.* 71 F.Supp.3d 262 (D.D.C. 2014)…………………..11

*Daily Caller v. U.S. Dept. of State*, 152 F.Supp.3d 1 (D.D.C. 2015)………………………..11,12

*Democracy Forward Found. v. Off. of Mgmt. & Budget,* 780 F. Supp. 3d 61 (D.D.C. 2025)….12

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976)……………………………………………………9

*Elec. Priv. Info. Ctr, v. Dept. of Justice*, 416 F.Supp.2d 30 (D.D.C. 2006)……………………..12

*Judicial Watch v. U.S. Dep't of Homeland Sec.,* 598 F.Supp.2d 93 (D.D.C.2009)……………….9

*Louise Trauma Ctr. LLC v. United States Citizenship & Immigr. Servs.*, 147 F.4th 495 (4th Cir. 2025)…………………………………………………………………………………………….

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020)………………………..10

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990)…………………………………..10

*Seavey v. Dep't of Just.*, 266 F. Supp. 3d 241 (D.D.C. 2017). ……………………………………10

*Shteynlyuger v. Centers for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 104 (D.D.C. 2023)…………………………………………………………………………………………...9

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991)…………………………………………………….

**Statutes**

Freedom of Information Act, 5 U.S.C. § 552, *et seq*., 28 U.S.C. §§ 2201, et seq…………………..1

      5 U.S.C. § 552(a)(3)(A)……………………………………………………………….....10

5 U.S.C. § 552(a)(4)(B)……………………………………………………………………...9

5 U.S.C. § 552(a)(6)(A)(i)……………………………………………………………….....1,9

5 U.S.C. § 552(a)(6)(C)(i)…………………………………………………………………10,11

5 U.S.C. §552(b)………………………………………………………………………….....13

5 U.S.C. §552(f)(1)………………………………………………………………………...5

**Rules**

Federal Rule of Civil Procedure 56…………………………………………………………9

**Regulations**

Title 20 DCMR Ch. 8, Asbestos Abatement and Control……………………………………….7

EPA National Emission Standards for Hazardous Air Pollutants (NESHAPs) for airborne asbestos, 40 CFR Part 61, Subpart M…………………………………………………………7

OSHA regulations for worker protection during asbestos abatement at construction sites. 29 CFR §1926.1101…………………………………………………………………………………7

**Other Authorities**

Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009)

## INTRODUCTION

This case is an action under the Freedom of Information Act (FOIA) 5 U.S.C. § 552, *et seq.*, 28 U.S.C. §§ 2201, et seq., by the Asbestos Disease Awareness Organization (ADAO), the largest U.S. nonprofit dedicated to preventing asbestos exposure through education, advocacy, community initiatives and litigation. The suit seeks to compel four federal agencies and the Executive Office of the President (EOP) to produce documents relating to the identification, removal and abatement of asbestos during the October 2025 demolition of the White House East Wing.

White House representatives have claimed that a "very extensive abatement and remediation assessment" was conducted before this demolition. However, they have repeatedly ignored requests by the media, members of Congress and stakeholders for documentation of the measures they took to prevent harmful exposure to asbestos, a known carcinogen responsible for millions of deaths worldwide. Frustrated by this unresponsiveness, plaintiff submitted detailed FOIA requests to the defendant agencies in early November 2025 and then filed suit on January 7, 2016 to compel defendants to meet their FOIA obligations.

Three of the agencies – Department of Labor (DOL), National Park Service (NPS) and Department of Interior (DOI) --- acknowledged receipts of the FOIA requests but have not responded. ADAO is moving for partial summary judgment with respect to these three agencies.

As shown below, under FOIA, an agency has 20 working days to make a "determination" on a request to produce records. 5 U.S.C. § 552(a)(6)(A)(i)). To make this determination, an agency must at least: "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the

1

reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." request. *Citizens for Resp. and Ethics in Washington v. Fed. Election Commn.*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("CREW").  Where such a determination is not made by the 20 day deadline, the requestor will have constructively exhausted its administrative remedies under FOIA and may file suit to judicially enforce its request.

      Partial summary judgment is warranted against DOL, NPS and DOI because there is no dispute that (i) they received the requests, (ii) the 20 day deadline has passed for their responses and (iii) they have failed to make the "determinations" required under FOIA. Accordingly, plaintiff seeks entry of an order by the Court directing the three defendants to make the required determinations within 10 working days and then produce responsive documents within 15 working days thereafter. Should the agencies maintain that they have no responsive documents or that such documents are being withheld under FOIA exemptions, the Court would adjudicate these issues in the next phase of this case.

      Plaintiff is not moving for summary judgment at this time with respect to defendant Environmental Protection Agency (EPA). Within the last week, the agency's counsel in this case provided ADAO's counsel with copies of letters purportedly sent to ADAO on November 10 and December 2, 2026. These letters claim to respond to plaintiff's two FOIA requests to EPA and indicate that no responsive documents could be found.  According to her attached declaration, ADAO's President has no recollection of receiving these letters and, following an exhaustive search, could not find any evidence of their receipt by regular mail or email. In light of EPA's assertion that ADAO received FOIA responses from the agency, ADAO believes summary judgment against EPA is premature at this time.

Although ADAO emailed its FOIA request to EOP on November 5 and 6, it did not acknowledge receipt. In filings with this Court in a related case involving the construction of the proposed WH ballroom, federal officials have identified the Office of the Executive Residence (EXR) within EOP as the entity responsible for overseeing and directing the WH ballroom project, including the demolition of the East Wing.  No. 1:25-cv-4316 (D.D.C), Declaration of Jessica Browan, ECF 30-3 (EXR is "handling project management for the Project, meaning that it is in control of all aspects of the day-to-day execution of the Project, including its scope, schedule, budget, design, and completion" (¶ 11).

To address any uncertainty about whether EOP received its FOIA request, ADAO is resubmitting it by mail and email and is therefore not at this time seeking judicial relief against EOP.

## STATEMENT OF THE CASE

### The Hazards of Asbestos

For over a century, asbestos has been known to cause widespread disease and death. In a monograph on asbestos published in 2012, the International Agency for Research on Cancer ("IARC") found asbestos exposure to be causally related to lung cancer, malignant mesothelioma, ovarian cancer, and cancer of the larynx in humans. IARC. Monograph 1OOC: Asbestos (Chrysotile, Amosite, Crocidolite, Actinolite· and· Anthophyllite), Lyon: International Agency for Research on Cancer (2012). There is evidence of causal associations with gastrointestinal cancers and kidney cancer. Non-malignant diseases caused by asbestos include asbestosis and asbestos-related pleural thickening. "There is general agreement among scientists and health agencies . . . [that] [e]xposure to any asbestos type (i.e., serpentine [chrysotile] or amphibole) can increase the likelihood of lung cancer, mesothelioma, and

nonmalignant lung and pleural disorders." Agency for Toxic Substances and Disease Registry U.S. Department of Health & Human Services. Toxicological Profile for Asbestos (2001).

From 1991 to 2017, more than one million Americans died from preventable asbestos-caused diseases.[1] Asbestos deaths – calculated to be over 40,000 per year in the US[2] – remain high, demonstrating that millions of Americans continue to be exposed to asbestos.

## About Requestor ADAO

Plaintiff ADAO is a non-profit organization whose mission is to prevent asbestos-caused diseases. ADAO works on many fronts to reduce and eliminate asbestos exposure. The tools it employs include public education, collaboration with grassroots communities, and scientific analysis and research.  ADAO also advocates for federal, state and local laws and regulations that protect against asbestos exposure and disease.

Because of the health effects of asbestos, ADAO believes it is critical to inform the public whether the extensive safeguards required by federal and District of Columbia asbestos regulations were followed during the East Wing demolition. If the White House failed to implement these safeguards before and during the East Wing demolition, White House staff, construction workers and bystanders may have been exposed to serious risks of cancer and lung-disease.

## About the Defendants

The three defendants to which this motion applies have responsibilities that bear on the identification and abatement of asbestos during the East Wing demolition:

---

[1] http://ghdx.healthdata.org/gbd-results-tool?params=gbd-api-2017 permalink/535c35ab1fc10471f721c9b58eecd3c2
[2] S. Furuya, O. Chimed-Ochir, K. Takahashi, A. David, and J. Takala, "Global Asbestos Disaster," *International Journal of Environmental Research and Public Health,* vol. 15, no. 5, p. 15, 2018.

- Through its Occupational Safety and Health Administration (OSHA), DOL is responsible for promulgating and implementing regulations for preventing dangerous asbestos exposure by workers during building demolitions. These regulations would have applied to any asbestos abatement activities that occurred during the East Wing demolition. Day-to-day regulation of asbestos abatement to protect workers is typically carried out by state and local agencies -- in this case the District of Columbia Department of Energy and Environment (DOEE) -- under DOL/OSHA oversight.
- NPS and DOI have direct responsibilities for maintaining and overseeing the White House and President's Park, which encompasses the White House and its surrounding grounds. According to recent court filings by DOI and NPS officials, defendants are knowledgeable about and deeply involved in the all aspects of the East Wing demolition and Ballroom construction project. No. 1:25-cv-4316 (D.D.C), Declaration of John Stanwich, ECF 14-6 ¶ 8).

The three defendants are "agencies" subject to FOIA as defined by 5 U.S.C. §552(f)(1) and are charged with the duty to provide public access to records in their possession consistent with FOIA's requirements.

<b><u>White House East Wing Demolition</u></b>

On July 31, 2025, the White House issued a press release announcing plans to build a "White House State Ballroom" on the White House grounds to host "substantially more guests" than the current structure allows. The press release stated that "[t]he site of the new ballroom will be where the small, heavily changed, and reconstructed East Wing currently sits." The release indicated that "[t]he project will begin in September 2025."

During planning for the project, several WH offices and agencies conferred about the East Wing and recognized the need to "remove toxic substances spread throughout the structure, including asbestos and lead-based paint." Declaration of Joshua Fisher ECF 30-1 ¶ 9. According to an October 30, 2025 ABC News story, a White House official indicated that, in preparation for the demolition of the East Wing, "a very extensive abatement and remediation assessment was followed, complying with all applicable federal standards." The official added that "any hazardous material abatement was done in September," prior to the demolition. ABC News further reported that. "[a]lthough White House officials would not say whether asbestos existed in the building, some experts suggest that its age and the era of its construction mean that it likely had the presence of the fiber. Originally completed in 1800, the building underwent major renovations in the 1940s and 50s, at the peak of asbestos use in buildings."

A declaration filed by President's Park Superintendent John Stanwich on December 15, 2025, confirmed that "abatement activities related to certain hazardous materials within the Project area were performed by Clark Construction during the months of September and October 2025." After completion of abatement, he said, "structural demolition of the East Wing and East Colonnade commenced on October 20, 2025." Stanwich Decl. ¶ 16. The Washington Post reported that, by October 23, 2025, the East Wing and its colonnade—which was built during the presidency of Thomas Jefferson— had been razed. According to Park Superintendent Stanwich, subsurface demolition was still underway in December 2025. Id. ¶ 19.

**Asbestos Identification and Abatement Requirements under Federal Law**

Because asbestos was extensively used in building construction for several decades, assuring the safe removal and disposal of asbestos fibers during repair, renovation and demolition of existing structures has been a high priority of federal, state and local regulatory

agencies. The core requirements for asbestos identification, removal and disposal are contained in the EPA National Emission Standards for Hazardous Air Pollutants (NESHAPs) for airborne asbestos and OSHA regulations for worker protection during asbestos abatement at construction sites. 40 CFR Part 61, Subpart M; 29 CFR §1926.1101. These regulations govern asbestos abatement at federally owned buildings as well as commercial and industrial sites.

The District of Columbia has enacted its own asbestos abatement regulations, which are enforced by DOEE. Title 20 DCMR Ch. 8, Asbestos Abatement and Control. The D.C. regulations incorporate by reference nearly all provisions of EPA asbestos NESHAPs and the OSHA asbestos standards. In addition, D.C. requires an Asbestos Abatement Permit for most asbestos removal; to obtain a permit, contractors must submit a notification package online at least 10 working days before abatement begins. Under the regulations, only licensed asbestos abatement contractors may obtain a permit. To qualify for a license, contractors must complete EPA-accredited asbestos abatement training.

In response to a FOIA request from ADAO, DOEE produced two permit notifications, dated February 14, 2025 and April 25, 2025, for asbestos abatement work performed at the White House Executive Residence but provided no permits or other documents pertaining to asbestos abatement prior to the East Wing demolition.

### ADAO's FOIA fequests For Records of Asbestos Abatement at the East Wing

On November 5-6, 2025, ADAO filed FOIA requests with the five defendants that sought "copies of asbestos abatement permits issued for the East Wing demolition and all related records that refer, relate to, address, document or reflect" --

1. Any "hazardous material abatement" conducted in relation to the East Wing renovation.

2. The "abatement and remediation assessment" that was performed and how that assessment was "followed."

7

    3. All actions that were taken to comply with applicable federal and District Columbia standards, such as the EPA Asbestos NESHAP (40 C.F.R. Part 61, Subpart M), OSHA Asbestos Construction Standards (29 CFR 1926.1101), and District of Columbia Asbestos Control Regulations (Chapter 20-800), including the following:

        a. Inspection and testing of the East Wing prior to demolition or renovation to identify the presence of asbestos-containing material;

        b. Asbestos abatement licenses issued to contractors performing asbestos abatement activities for the East Wing;

        c. Permits issued authorizing asbestos abatement work for the East Wing;

        d. Notification submissions to licensing and permitting authorities in advance of permit issuance and the commencement of asbestos abatement work;

        e. Adherence to work practice standards to prevent asbestos emissions and safe removal of asbestos-containing materials, including monitoring of asbestos levels, use of respirators and other personal protective equipment to prevent worker exposure, installation of exhaust ventilation, negative pressure enclosures and glove-bag procedures, wetting all asbestos containing material to prevent airborne releases that could endanger bystanders or workers, and sealing the removed material in leak-tight containers;

        f. Presence of an onsite representative trained in the regulatory provisions and the means of compliance;

        g. Training and education of abatement workers;

        h. Warning signs and physical barriers to prevent bystanders and unauthorized personnel from entering asbestos abatement areas;

        i. Handling, securing and labeling procedures to prevent air releases of removed asbestos while transporting it from the demolition site to an asbestos landfill;

        j. Disposal of asbestos waste at a landfill implementing special requirements for handling and securing the waste to prevent air releases;

        k. Records maintained by contractors, waste shippers, disposal sites and government oversight personnel for all stages of the inspection, abatement and disposal process.

Links to these requests are included in the Reinstein declaration.

**ARGUMENT**

I. **COURTS HAVE AUHORITY TO ENFORCE FOIA REQUESTS IF AGENCIES FAIL TO MAKE DETERMINATIONS ON THESE REQUESTS WITHIN 20 WORKING DAYS**

FOIA reflects a "profound national commitment to ensuring an open Government" and agencies must "adopt a presumption in favor of disclosure." Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009). FOIA is "designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.' " *U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

"FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56." *Akel v. U.S. Dep't of Justice*, 578 F. Supp. 3d 88, 94–95 (D.D.C. 2021). As in any other case, the moving party must demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, (1986); *Shteynlyuger v. Centers for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 104 (D.D.C. 2023). When assessing a summary judgment motion in a FOIA case, a court must make a *de novo* determination of whether the agency has properly withheld the requested documents. *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch v. U.S. Dep't of Homeland Sec.,* 598 F.Supp.2d 93, 95 (D.D.C.2009).

Agencies must "determine" within twenty working days after receipt of a FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). The 20-day deadline for response may only be extended for an additional ten working days and only in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). The agency's "determination" must satisfy three requirements. As the DC Circuit explained in *Citizens for Resp. and Ethics in Washington v. Fed. Election Commn.*, 711 F.3d 180, 189 (D.C. Cir. 2013) (*CREW*), "the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents

9

it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW,* 711 F.3d at 188.

However, "a 'determination' does not require actual *production* of the records to the requester at the exact same time. Under the statutory scheme, a distinction exists between a "determination and subsequent production." *CREW*, 711 F.3d at 188. Once a determination is made, "FOIA requires that the agency make the records 'promptly available.' " Id; 5 U.S.C. § 552(a)(3)(A). Accordingly, the agency has "some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce." Id. at 189. How much time the agency can take depends on the circumstances but the D.C. Circuit has indicated that production would "typically" be expected "within days or a few weeks of a 'determination,' not months or years." Id. *See also Seavey v. Dep't of Just.*, 266 F. Supp. 3d 241, 244 (D.D.C. 2017).

"As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 372 (D.C. Cir. 2020) (cleaned up). The exhaustion requirement provides the agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) (citation omitted). However, a FOIA requester is "'deemed to have exhausted his administrative remedies' if the agency fails to comply with applicable statutory time limits.'" *Machado*, 971 F.3d at 372 (quoting 5 U.S.C. § 552(a)(6)(C)(i)).

**II.     THE UNDISPUTED FACTS IN THIS CASE DEMONSRATE THAT DOL, DOI AND NPS FAILED TO MEET FOIA DEADLINES AND THE COURT MUST ORDER THEM TO COME INTO COMPLIANCE**

The material facts are not in dispute in this case and demonstrate that the three defendants are in violation of FOIA as a matter of law.

The ADAO requests were submitted on November 5-6, 2025 and the 20-working day deadline for response expired well before ADAO filed suit on January 7, 2026. According to the Reinstein declaration, the three defendants acknowledged receipt by opening files for and assigning identification numbers to the ADAO requests. However, these actions did not meet defendants' FOIA obligations. As the Fourth Circuit has held, "boilerplate acknowledgment 1letters . . . do not constitute 'determinations' under FOIA." *Louise Trauma Ctr. LLC v. United States Citizenship & Immigr. Servs.*, 147 F.4th 495, 499–500 (4th Cir. 2025). "It is not enough that, within the relevant time period, the agency simply decide to later decide." *CREW*, 711 F.3d at 186. Thus, the defendants failed to make the required "determinations" on the ADAO requests before its suit was filed and still have not done so.[3] Under these circumstances, ADAO "shall be deemed to have exhausted [its] administrative remedies with respect to" its requests to the three defendants, 5 U.S.C. §552(a)(6)(C)(i), giving the Court jurisdiction to order them to comply with those requests.

An order of this Court requiring expeditious FOIA responses is necessary in light of the three defendants' non-compliance with FOIA deadlines. Failure to meet the statutory deadline for making a determination warrants "immediate judicial supervision over an agency's response to an outstanding FOIA request." *Daily Caller v. U.S. Dept. of State*, 152 F.Supp.3d 1, 10 (D.D.C. 2015). *See also Clemente v. Fed. Bureau of Investigation*, 71 F.Supp.3d 262, 269 (D.D.C. 2014) (a court "may use its equitable powers to require the agency to process documents

---

[3] As described in the Reinstein declaration, ADAO received a letter from DOL on February 8, 2026 but this letter failed to indicate that it had undertaken a search for responsive records and thus was not a "determination."

11

according to a court-imposed timeline."); *Elec. Priv. Info. Ctr, v. Dept. of Justice*, 416 F.Supp.2d 30, 37–38 (D.D.C. 2006) ("FOIA, as amended, envisions the courts playing an important role in guaranteeing that agencies comply with its terms.").

ADAO requests that the Court order defendants to make a "determination" on its FOIA requests within 10 working days. The requests are narrow in scope and limited to documents relating to hazardous material identification, removal, abatement and disposal in connection with the East Wing demolition. The defendants should be able to expeditiously determine whether such documents are in their possession, gather and review them if they exist, and inform ADAO of their plans for making them publicly available.

The Court's order should also set a further deadline of 15 working days following these determinations for producing any non-exempt documents responsive to ADAO's requests. Setting such deadlines is a widely accepted judicial tool for achieving FOIA's objective of timely disclosure of withheld information to the public. A single order mandating timelines for both making determinations and producing responsive documents would avoid the need for an extra round of judicial proceedings, conserving the resources of the Court and parties and expediting public access to responsive documents.

"[T]imely disclosure of information of potential public interest was among Congress's central aims in enacting FOIA." *Daily Caller*, 152 F. Supp. 3d at 13. As the court emphasized in *Democracy Forward Found. v. Off. of Mgmt. & Budget,* 780 F. Supp. 3d 61, 78 (D.D.C. 2025), FOIA's tight deadlines further the "public benefit in the release of information that adds to citizens' knowledge of the activities of their government." (quoting *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 15.)

These goals are particularly apt here. Five months have passed since the White purportedly conducted "a very extensive abatement and remediation assessment" for hazardous materials. The East Wing demolition itself took place over three months ago. If the demolition resulted in unauthorized asbestos exposure by construction workers, employees of the White House, workers in adjoining federal office buildings, and bystanders frequenting the surrounding area, the public should be made aware of the resulting risks to health. Right now, however, the public is in the dark.

Instead of producing all documents in their possession, the defendants may withhold documents as exempt from disclosure under 5 U.S.C. §552(b). In this event, any challenges by ADAO to these exemption claims could be adjudicated by the Court in a later phase of the case.

## CONCLUSION

Plaintiff's motion for partial summary judgment against defendants DOL, DOI and NPS should be granted. The Court should enter an order setting a deadline of 10 working days for these defendants to make determinations on plaintiff's FOIA requests and a further deadline of 15 working days after these determinations to disclose records responsive to these requests.

Dated: January 9, 2026

Respectfully submitted,

*/s/ Robert M. Sussman*
Robert M. Sussman DC BAR NO. 226746
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
bobsussman1@comcast.net

*Attorney for Plaintiff Asbestos Disease Awareness Organization*

13

14